KITCHENS, Justice,
dissenting:
¶ 32. Because a genuine issue of material fact remains in this case, namely whether Dr. Peoples proximately caused Mattie Aldridge’s death through his negligent prescription of Coumadin, I respectfully dissent.
¶ 33. In our examination of a lower court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Rule 56 of our Rules of Civil Procedure provides the basis for summary judgment:
The judgment sought shall be rendered •forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as á matter of law.
M.R.C.P. 56(c). This Court will consider all of the evidence before the trial court in the light most favorable to the nonmoving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may hot rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rulé, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
¶ 34. To establish a prima facie case of medical malpractice, the plaintiff must show that:
(1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of duty was a proximate cause of the plaintiffs injury, and; (4) the plaintiff was injured as a result.
Delta Reg'l Med. Ctr. v. Venton, 964 So.2d 500, 504 (¶ 8) (Miss.2007).
¶ 35. It is clear that Tamara Glenn, the executrix of Mattie Aldridge’s estate, has established that Dr. Peoples owed Al-dridge the duty to provide her reasonable and ordinary medical care. Further, there exists a genuine issue of material fact about whether Dr. Peoples breached his duty of ordinary care by prescribing Coumadin to Aldridge. Therefore, our analysis must address whether there is a genuine issue of material fact concerning whether Dr. Peoples proximately caused Aldridge’s injuries.
¶ 36. The majority posits that Glenn has offered no proof that the Coumadin in Aldridge’s' system was prescribed by Dr, *990 Peoples. In so doing, the majority either overlooks or misinterprets the relevant facts and circumstances. According to the majority, Dr. Peoples claims that (the Coumadin in Aldridge’s system at the time of her stroke was prescribed by Dr. Jones, thereby relieving Dr. Peoples of liability. But Dr. Peoples has put forth no evidence that Dr. Jones’s prescription of Coumadin was based on Dr. Jones’s independent medical judgment and did not result from deference to Dr. Peoples’s hospital discharge orders. Instead, the majority relies on Dr. Peoples’s rhetorical argumént that Dr. Jones could have exercised independent judgment over Aldridge’s Couma-din prescription. The record establishes that Dr. Peoples was the physician with primary responsibility for Aldridge’s vascular care. This is evidenced by her followup. appointment with Dr. Peoples in 2008 after her ischemic stroke, his treatment of her 2010 blood clot, his treatment of her 2010 hemorrhagic stroke, and his treatment of "her 2010 “asthma exacerbation.” It also is apparent from the discharge order that Dr. Peoples knew that other physicians at St. Dominic had determined that Aldridge should never again be given blood thinners, because she was not an appropriate candidate for this kind of medication. Moreover; as Glenn argues in her brief, it is clear from Dr. Peoples’s discharge order that, while he intended for Aldridge to be taken off Lovenox when her blood consistency stabilized, he intended for her to remain on Coumadin indefinitely. Moreover, given that Dr. Peoples had primary responsibility for Aldridge’s vascular care through his treatment of her during significant, traumatic events requiring hospitalization, it is reasonable to infer that Dr. Jones would be deferential to Dr. Peoples’s judgment concerning Aldridge’s medication for treatment of her vascular disease. There is no .proof in the record that Dr. Jones’s continued administration of Coumadin was based on his independent judgment. At the same time, there is no evidence to refute the likelihood that Dr. Jones was acting in compliance with Dr. Peoples’s hospital discharge order, which stipulated that Mattie Aldridge should remain on Coumadin indefinitely. Conversely, if Dr. Jones had deviated significantly from Dr. Peoples’s discharge order, Dr. Peoples would be in a position to argue that he was not responsible for the consequent damages, because Dr. Jones had not been deferential to his discharge orders. Sufficient issues of fact remain in this case to survive summary judgment regarding whether Dr. Peoples’s Coumadin prescription was the proximate cause, or a proximate contributing cause, of Aldridge’s death.
¶ 37. Dr.‘ Peoples argues that, even if he was negligent in prescribing Coumadin, he was relieved of any liability through the superseding cause of Dr. Jones’s negligence in monitoring Aldridge during her stay at Trinity Rehabilitation. Dr. Peoples contends that it was unforeseeable that Dr. Jones would stop testing Al-dridge’s- blood consistency- while she was taking Coumadin. However, his discharge order required that Dr. Jones test Al-dridge’s blood to determine when she should discontinue Lovenox-. There is no mention of continued testing to monitor Aldridge’s use of Coumadin.. Dr. Peoples, in essence, is complaining that Dr. Jones adhered to Dr. Peoples’s hospital discharge orders.
¶ 38. Even assuming that Dr. Peoples had recommended daily testing of Al-dridge’s blood’s consistency in his discharge order or that the standard of medical care required Dr. Jones to test Aldridge’s blood daily and he negligently failed to do so, Dr. Peoples is not relieved of liability based- on Dr. Jones’s subsequent negligence. A tortfeasor’s proxi *991 mate liability is not extinguished by an “intervening force,” meaning that a tort-feasor still is liable if another force or third party “actively operates in producing harm to another after the actor’s negligent act or omission has been committed.” Restatement (Second) of Torts § 441 (1965). The bright-line standard for determining whether another actor’s negligence is an intervening force, and therefore does not relieve the original tortfeasor of liability, is whether it is foreseeable. Canton Broiler Farms, Inc. v. Warren, 214 So.2d 671, 676-77 (Miss.1968) (“[I]f foreseeable, the subsequent negligence is not independent and intervening, but is concurrent with the prior negligence.”); Meridian Hatcheries, Inc. v. Troutman, 230 Miss. 493, 509, 93 So.2d 472, 476 (1957) (“We believe the rule to be that where the act of a third party, even if it is negligent, intervenes between the original negligence of defendant and the injury, there is proximate cause if, under the circumstances, an ordinarily prudent man could,or should have anticipated that such intervening act, or a similar intervening act, would occur.”). This Court has adopted a broad definition of foreseeability, holding that things are foreseeable if they are “not unforeseeable.” Billups Petroleum Co. v. Entrekin, 209 Miss. 302, 313, 46 So.2d 781, 784 (1950) (“It is no defense that the liability is seen to extend beyond the risk.... The test is- not always whether an intervening or activating cause is foreseeable if it be not unforeseeable.”).
¶ 39. The Restatement. (Second) of Torts attempts to draw a dividing line by shielding a defendant from liability if the intervening force can be classed as a “superseding cause.” See Restatement (Second) of Torts § 440 (1965). The Restatement defines a superseding cause as:
[A]n act of a third, person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

Id.

¶ 40. The Restatement articulates six factors, which this Court adopted in Southland Management Company v. Brown, 730 So.2d 43 (Miss.1998), to consider in determining whether a particular intervening force can be considered a superseding cause:
(a) the fact .that its intervention brings about harm different in kind from that which .would .otherwise .have - resulted from the actor’s negligence;
(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
(c) the fact that the intervening force is operating independently of any situation created by the actor’s negligence, or, on the other hand, is or is not a normal result of such a situation;
(d) the fact that the operation of the intervening force is due tó a third person’s act or to his failure to act;
(e). the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; ... ...
(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.
Id. at 46 (quoting Restatement (Second) of Torts § 440 (1965)).
¶ 41. A fair analysis of these factors, taken in the light most favorable to Glenn, the party against whom summary, judgment was -granted, is: (a) -A hemorrhagic stroke is- exactly the type of-harm that would be caused by prescribing Coumadin *992 to a person who was medically unsuited for this prescription. This factor weighs in favor of foreseeability, (b) Given that the warning label cautions about Coumadin causing excessive bleeding, bleeding in the brain would be an ordinary and expected consequence of a physician’s negligently prescribing Coumadin, which Aldridge’s expert confirmed. This factor weighs in favor of foreseeability, (c) Dr. Jones’s need to monitor Aldridge’s blood consistency was a consequence brought about by Dr. Peoples’s allegedly negligent prescription of Coumadin. This factor weighs in favor of foreseeability, (d) According to Dr. Peoples, Aldridge’s death was caused by Dr. Jones’s failure to monitor the patient appropriately. This factor weighs against foreseeability and in favor of finding Dr. Jones’s negligence to . have been a superseding cause, .(e) Although Dr. Jones may have been negligent, it. cannot be argued that his actions were purposefully wrongful or malicious. This factor weighs in favor of foreseeability, (f) Dr. Jones would not be criminally culpable for this act. It cannot even be argued that his act was “foolhardy” or “malicious.” See Brown, 730 So.2d at 47. This factor weighs in favor of foreseeability. (The items (a) through (f) correspond with the factors' stated in the Restatement.) In the light most favorable to Glenn, only one factor — “the intervening foree is due to a third person’s act or to his failure to act”— weighs in favor of Dr. Peoples’s argument that Aldridge’s death was not a foreseeable consequence of his negligent prescription of Coumadin. By contrast, in Brown, the Court held that the defendant had to prove all six factors to establish superseding' cause as a matter of law. See id.
¶ 42. Ultimately, because genuine issues of material fact remain with regard to whether Dr. Peoples proximately caused Aldridge’s death through his negligent prescription of Coumadin, I respectfully dissent.
KING, J., JOINS THIS OPINION.